Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| HÉCTOR N. GALLOZA SERRANO, ET. ALS  Apelados  v.  CENTRO DE DESARROLLO ACADÉMICO, INC.  Apelante | KLAN202400153 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo  Caso Civil Núm.: C CD2014-0244 (Sala 401)  Sobre: Cobro de Dinero |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de marzo de 2024.

Comparece la parte apelante, Centro de Desarrollo Académico, Inc. (en adelante, CDA), y el señor Carlos Morales Vázquez (en adelante, Sr. Morales Vázquez) (en conjunto la parte apelante), mediante un recurso de apelación y nos solicita que revoquemos la *Sentencia* dictada el 8 de noviembre de 2023 y notificada el 14 de noviembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (en adelante, el TPI). Mediante dicha *Sentencia,* el TPI declaró con lugar la *Demanda* sobre cobro de dinero contra la parte apelante y les ordenó pagarle al señor Héctor N. Galloza Serrano (en adelante, el Sr. Galloza Serrano) la cantidad de $80,000.00. Además, dispuso que no se habían encontrado probados los requerimientos necesarios para descorrer el velo corporativo y declaró no ha lugar la reconvención presentada por CDA en contra del Sr. Galloza Serrano.

Número Identificador

SEN2024_____

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I.**

El 16 de abril de 2014, el Sr. Galloza Serrano, Minerva Laguer Bonilla y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto la parte apelada), presentaron una *Demanda* sobre cobro de dinero, incumplimiento de contrato y daños y perjuicios contra CDA.[1] En lo pertinente, estos alegaron que el Sr. Galloza Serrano y CDA contrataron el 31 de marzo de 2011, para que este primero ejerciera las funciones de presidente de la segunda, la cual es una corporación doméstica cuyo fin primordial es proveerle servicios al Departamento de Educación de Puerto Rico. Según las alegaciones de la *Demanda*, las partes acordaron que el Sr. Galloza Serrano recibiría una compensación consistente en un sueldo mensual fijo y una compensación adicional. Además, alegaron en la *Demanda* que CDA le ofreció servicios al Departamento de Educación bajo la presidencia del Sr. Galloza Serrano y que, de acuerdo con los términos y condiciones del contrato, CDA le adeudaba al Sr. Galloza Serrano por sus servicios. Solicitaron en la *Demanda* el pago de la suma adeudada, intereses al tipo legal desde la fecha de haberse configurado la obligación de satisfacer las sumas adeudadas y daños y perjuicios.

Luego de varios trámites procesales, el 29 de octubre de 2015, la parte apelada presentó *Primera Demanda Enmendada*.[2] En esta, además de CDA, incluyeron como parte demandada al Sr. Morales Vázquez y a las corporaciones Master Link Corporation (MLC), Master Link Acquisition Corporation (MLAC), GF Solutions, Inc. (GF), y Wide Range, Corp., (Wide). Además, incluyeron en la demanda a las aseguradoras X, Y y Z.

---

[1] Apéndice de la *Apelación*, a las págs. 49-52.
[2] Apéndice de la *Apelación*, a las págs. 53-61.

En la demanda enmendada, la parte apelada reprodujo las alegaciones contenidas en la demanda original referentes a la deuda. Además, adujo que las corporaciones antes mencionadas eran corporaciones domésticas de las cuales el Sr. Morales Vázquez era accionista mayoritario y ejercía total control y dominio de las finanzas, políticas y negocios de cada una de ellas. Asimismo, alegó que dichas corporaciones funcionaban como instrumento, agente o *alter ego* del Sr. Morales Vázquez, y no como corporaciones independientes. Ante esto, la parte apelada le solicitó al TPI descorrer el velo corporativo y que responsabilizara al Sr. Morales Vázquez en su carácter personal por las sumas reclamadas.

Surge del expediente que el 9 de agosto de 2019, el TPI dictó *Resolución* mediante la cual desestimó las reclamaciones extracontractuales contra las corporaciones MLC, MLAC, GF y Wide.[3]

El 5 de diciembre de 2019, el Sr. Morales Vázquez presentó su *Contestación a la Demanda Enmendada.*[4] Mediante esta, el Sr. Morales Vázquez negó las alegaciones en su contra y, en lo pertinente, adujo que las corporaciones operaban de forma independiente. Además, levantó sus defensas afirmativas. Entre estas últimas, surge que levantó la defensa de falta de parte indispensable.

El 8 de noviembre de 2023, el TPI emitió *Sentencia*, la cual fue notificada el 14 de noviembre de 2023.[5] En esta, el TPI declaró "Ha Lugar" la demanda presentada en cuanto a la deuda reclamada a

---

[3] Apéndice de la *Apelación*, a la pág. 5.

[4] Apéndice de la *Apelació*n, a las págs. 62-66. Surge del expediente que CDA solo presentó contestación y reconvención en cuanto a la demanda original el 23 de octubre de 2014. Posteriormente, presentó una reconvención enmendada el 17 de noviembre de 2014. En síntesis, alegaron que el Sr. Galloza Serrano incumplió con su obligación de fiduciario para con CDA, debido a que realizó gestiones con otras compañías que ofrecían los mismos servicios de CDA, lo cual provocó la pérdida de recursos humanos y del producto económico del trabajo de estos.

[5] Apéndice de la *Apelación*, a la págs. 3-19. En lo pertinente al caso ante nos, surge de la *Sentencia* que las partes estipularon el siguiente hecho: "Carlos Morales Vázquez es el accionista mayoritario de CDA. Gregorio Figueroa también es accionista de CDA".

CDA. Asimismo, el TPI ordenó el pago de CDA al Sr. Galloza Serrano por la cantidad de $80,000.00. Además, el foro primario no encontró probados los requerimientos necesarios para descorrer el velo corporativo. También, declaró "No Ha Lugar" la reconvención presentada por CDA en contra del Sr. Galloza Serrano.

El 29 de noviembre de 2023, la parte apelante presentó ante el TPI una *Reconsideración de la Sentencia y Moción para Desestimar la Primera Demanda Enmendada por Falta de Parte Indispensable*.[6] Mediante esta le solicitó al TPI que reconsiderara las alegaciones presentadas y que al amparo de la Regla 16.1 de Procedimiento Civil, *infra,* desestimara la demanda enmendada en la cual la parte apelada solicitó descorrer el velo corporativo de CDA y en la que incluyó al Sr. Morales Vázquez. No obstante, la parte apelante señaló que la parte apelada, aun con conocimiento de que había dos accionistas en la corporación de CDA, enmendó su demanda para incluir en su carácter personal solo a un accionista, el Sr. Morales Vázquez. Sin embargo, no incluyó al Sr. Gregorio Figueroa Alcalá (en adelante, Sr. Figueroa Alcalá), quien también era accionista de CDA a razón del 50%. Arguyó que el Sr. Figueroa Alcalá no era una parte desconocida, toda vez que se le entregó información de los accionistas a la parte apelada durante el descubrimiento de prueba. Así pues, argumentaron que el TPI nunca adquirió jurisdicción sobre el Sr. Figueroa Alcalá, como accionista de CDA, por lo que el foro de instancia estaba impedido de otorgar un remedio completo en el caso. Expresaron que la determinación de descorrer el velo corporativo para imponerle responsabilidad a los accionistas de CDA, incluye también el patrimonio del Sr. Figueroa Alcalá para responder por las deudas y obligaciones de la corporación. Por tanto, la parte apelante expresó que al no emplazarse el Sr. Figueroa

---

[6] Apéndice de la *Apelación,* a las págs. 20-38.

Alcalá, no se cumplió con el debido proceso de ley, por lo que se debía desestimar el pleito.

Por su parte, la parte apelada presentó su *Oposición a Reconsideración* el 26 de diciembre de 2023.[7] Argumentó que el reclamo de la parte apelante era inmeritorio debido a que el TPI había desestimado la alegación de descorrer el velo corporativo. Por tanto, señaló que no procedía considerar los argumentos de la parte apelante, ya que el remedio concedido por el TPI fue contra CDA por el incumpliendo contractual. Asimismo, mencionó que el argumento de falta de parte indispensable sería relevante únicamente si el TPI hubiera determinado descorrer el velo corporativo, momento en el cual hubiera procedido entrar en los méritos de dicha contención. Además, añadió la parte apelada que en el presente caso no era necesario incluir en el pleito al Sr. Figueroa Alcalá como accionista, toda vez que la acción fue dirigida contra el Sr. Morales Vázquez como accionista mayoritario de CDA, por actuaciones que lo responsabilizaban en su carácter personal. Mencionaron en su escrito que la responsabilidad del accionista es individual.

El 11 de noviembre de 2023, el TPI dictó una *Resolución*, notificada el 18 de enero de 2024, en la cual declaró "No Ha Lugar" la *Reconsideración* solicitada por la apelante.

Inconforme con esta determinación, la parte apelante interpuso el presente recurso de *Apelación* el 20 de febrero de 2024 ante este foro revisor y señaló la comisión del siguiente error:

> ERRÓ EL HONORABLE TPI AL NO EXAMINAR SU PROPIA JURISDICCIÓN ANTES DE HACER UNA DETERMINACIÓN EN ESTE CASO ANTE EL ALEGATO DE LA PARTE DEMANDADA DE FALTA DE PARTE INDISPENSABLE POR FALTA DE LA PRESENCIA DE UNO DE LOS ACCIONISTAS DE LA EMPRESA CDA ANTE LA SOLICITUD DE LA PARTE DEMANDANTE DE DESCORRER EL VELO CORPORATIVO DE CDA.

---

[7] Apéndice de la *Apelación*, a las págs. 39-48.

El 15 de marzo de 2024, la parte apelada presentó *Alegato en Oposición de la Parte Apelada Héctor N. Galloza Serrano, Su Esposa Minerva Laguer y la Sociedad Legal de Gananciales Compuesta por Ambos.*

Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

La desestimación es un pronunciamiento judicial que resuelve el pleito de forma desfavorable para el demandante sin celebrar un juicio en su fondo o en los méritos. S.*L.G. Sierra v. Rodríguez,* 163 DPR 738, 745 (2005); R. Hernández Colón, *Práctica Jurídica de Puerto Rico Derecho Procesal Civil,* Quinta Edición, San Juan, Michie de Puerto Rico, 2010, pág. 369. De este modo, nuestro ordenamiento procesal civil dispone varios supuestos en los cuales una parte puede solicitar la desestimación de una acción en su contra antes de presentar la contestación a la demanda. R. Hernández Colón, *op. cit.,* págs. 266-267.

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, establece, en lo pertinente, lo siguiente (énfasis nuestro):

> Toda defensa de hechos o de derecho contra una reclamación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante moción debidamente fundamentada:
>     (1) falta de jurisdicción sobre la materia.
>     (2) falta de jurisdicción sobre la persona.
>     (3) insuficiencia del emplazamiento;
>     (4) insuficiencia del diligenciamiento del emplazamiento;
>     (5) dejar de exponer una reclamación que justifique la concesión de un remedio.
>     **(6) dejar de acumular una parte indispensable.**
>     [...]

La citada regla establece los fundamentos para que una parte en un pleito pueda solicitar la desestimación de una demanda en su contra, mediante la presentación de una moción fundamentada en cualesquiera de los motivos en ella expuestos. *El Día, Inc. v. Mun. de*

*Guaynabo*, 187 DPR 811, 820-821 (2013); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 935 (2011).

A los fines de disponer de una moción de desestimación, el tribunal está obligado a dar por ciertas y buenas todas las alegaciones fácticas de la demanda radicada y que hayan sido aseveradas de manera clara. *Torres Torres v. Torres et al.*, 179 DPR 481, 501 (2010); *Perfect Cleaning v. Cardiovascular*, 172 DPR 139, 149 (2007); *Colón v. Lotería*, 167 DPR 625, 649 (2006). De igual modo, la demanda no debe desestimarse a menos que se desprenda con toda claridad y certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank,* 193 DPR 38 (2015).

El debido proceso de ley exige que se acumulen todas las partes con interés común en un pleito. *Pérez Ríos et al. v. CPE,* 2023 TSPR 136, 213 DPR ___ (2023). Esto responde a dos principios básicos: (1) la protección constitucional que impide que una persona sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el dictamen judicial que en su día se emita sea uno completo. *Íd.*

Por su parte, la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, define una parte indispensable como las "personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia [...]". Véanse, además: *Watchtower Bible et al. v. Mun. Dorado I*, 192 DPR 73, 118 (2014); *Bonilla Ramos v. Dávila Medina*, 185 DPR 667, 678 (2012); *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007). Asimismo, la Regla 16.1, *supra,* lo que pretende es "proteger a las personas ausentes de los posibles efectos perjudiciales que pueda ocasionarles la resolución del caso y evitar la multiplicidad de pleitos". *Pérez Ríos et al. v. CPE*, supra, pág. 9.

El interés de la parte debe ser real e inmediato, para que se considere que dicha parte es indispensable; no puede tratarse de "*meras especulaciones o de un interés futuro*". *Deliz et als. v. Igartúa et als.*, 158 DPR 403, 435 (2003) (énfasis en el original). El alcance de la figura de parte indispensable es restringido, de forma que solamente puede invocarse cuando la "adjudicación sin la persona ausente tendría un efecto perjudicial sobre el interés real e inmediato" de esta. *García Colón et al. v. Sucn. González*, 178 DPR 527, 549 (2010), citando a *Mun. de Ponce v. A.C. et al.*, 153 DPR 1, 16 (2000).

Para determinar si una parte es realmente indispensable, debemos adoptar un enfoque pragmático, pues el asunto dependerá de los "hechos particulares y específicos" del caso. *Deliz et als. V Igartúa et als.*, supra, pág. 434, citando *Granados Navedo v. Rodríguez Estrada II*, 124 DPR 593, 605 (1989). Debemos realizar "una evaluación individual de acuerdo con las circunstancias particulares presentes en cada caso" y no utilizar una "fórmula con pretensiones omnímodas". *García Colón et al. v. Sucn. González*, supra, pág. 550.

En ese contexto, al determinar si estamos ante una parte indispensable, debemos evaluar los siguientes factores: (1) el interés común de todas las partes sobre el asunto medular del pleito; (2) la inmediatez de ese interés ante el litigio en proceso; y (3) la necesidad de que la presencia de la parte acumulada garantice un remedio completo a las partes que ya están en el caso. *Íd.*; *Romero v S.L.G. Reyes*, 164 DPR 721, 733 (2005).

**B.**

La Ley Núm. 64-2009, según enmendada, conocida como la "Ley General de Corporaciones", 14 LPRA sec. 3501 *et seq.* (en adelante, "Ley Núm. 64-2009" o "Ley de Corporaciones"), "es el estatuto especial por virtud del cual se deben atender los

cuestionamientos relativos a la existencia y vida jurídica de las corporaciones privadas". *Eagle Security v. Efrón Dorado et al.*, 211 DPR 71 (2023). Es norma reiterada que una corporación debidamente organizada bajo el referido estatuto tiene su propia personalidad jurídica y su propio patrimonio, distinto al de la personalidad y patrimonio de sus accionistas, ya sean estos personas naturales o jurídicas. *D.A.Co. v. Alturas FI. Dev. Corp. y otro,* 132 DPR 905, 924 (1993).

En nuestro ordenamiento jurídico se adoptó la doctrina de descorrer el velo corporativo, la cual, fue desarrollada jurisprudencialmente por los tribunales federales. El profesor Carlos Díaz Olivo describe la misma como "un mecanismo de control que cierra el paso al abuso y utilización impropia de la figura corporativa". C.E. Díaz Olivo, *Corporaciones*: tratado sobre derecho corporativo, 2da ed. rev., Colombia, Ed. AlmaForte, 2022, pág. 118. Ello podría ocurrir "cuando una corporación toma el control de otra entidad, que usualmente desaparece y se demuestra que esa sustitución tiene propósitos ilegales, constituye una violación de política pública, se perpetuaría una injusticia o un fraude, o se incumpliría con una obligación". *Rodríguez v. Bco. Gub. de Fom. P.R.,* 151 DPR 383, 398 (2000). De igual forma, una corporación puede ser el *alter ego* de un accionista cuando la identidad de ambas partes esté confundida a tal grado que la corporación no es en realidad una persona jurídica independiente y separada. Así, pues, nuestro más alto foro judicial ha reconocido que el análisis bajo esta doctrina requiere que se demuestren propósitos o intentos de cometer actos ilegales. *Íd.* Es por tal razón que la doctrina busca evitar la utilización indebida de la corporación como instrumento para perpetuar un fraude o una acción ilegal. Díaz Olivo, *op. cit.* pág. 118.

Establecido lo anterior, la única forma en que un tribunal puede descartar la personalidad jurídica de una corporación para sujetar el patrimonio de esta con el de sus accionistas, a los fines de que la corporación responda por las deudas y obligaciones de los accionistas, será en aquellos casos en que la corporación actúe meramente como un *alter ego* o instrumento económico pasivo de sus únicos accionistas, recibiendo estos exclusiva y personalmente los beneficios producidos por la gestión corporativa. Por lo tanto, "[l]a consecuencia de la aplicación de la doctrina de descorrer el velo corporativo es suspender la exención de responsabilidad que de ordinario asiste a los accionistas de una corporación con respecto a las deudas corporativas, para hacerlos responsables de estas". Díaz Olivo, *op. cit.* pág. 117.

Por otro lado, y como norma general, los accionistas, directores y oficiales de una corporación no vienen obligados a responder de manera personal por las obligaciones de esta. Ahora bien, el Artículo 12.04 de la Ley Núm. 64-2009, *supra*, establece ciertas excepciones en donde se les puede imponer responsabilidad personal a los oficiales, directores y accionistas por las deudas de una corporación. *Íd.*, pág. 427. El precitado Artículo regula el procedimiento que los acreedores podrán seguir en estos casos, el cual expresamente dispone lo siguiente:

> **A.** Cuando los oficiales, directores o accionistas de cualquier corporación estén obligados a pagar las deudas, o cualquier parte de las deudas de la corporación, según lo dispuesto en esta Ley, cualquier acreedor podrá entablar una acción en contra de uno o más de ellos. En la demanda se consignará la reclamación en contra de la corporación y el fundamento por el cual el demandante espera recobrar de los demandados personalmente.

> **B.** No se entablará pleito alguno contra ningún oficial, director o accionista por deuda u obligación de la corporación de la cual es oficial, director o accionista, hasta que se dicte sentencia final en contra de la corporación, y que la ejecución de la misma permanezca insatisfecha ni después de tres (3) años a partir de la fecha de tal sentencia, y cualquier oficial, director o

accionista podrá levantar cualquier defensa que la corporación hubiere podido levantar contra tal deuda u obligación. Este inciso (B) no aplicará a los pleitos que se entablen contra oficiales o directores de una corporación que estén en proceso de disolución por mala administración, en el ejercicio de sus funciones con arreglo al Capítulo IX de esta Ley. 14 LPRA sec. 3784.

De una lectura de las transcritas disposiciones estatutarias, se desprende que para que un demandante pueda instar una acción en contra de los directores, oficiales o accionistas de una corporación, por las deudas u obligaciones de esta, debe contar con una sentencia previa dictada a su favor por el tribunal y en contra de la corporación, sin que haya podido ser ejecutada y antes de que expire el término de tres (3) años a partir de la dictada la sentencia. Una vez satisfechas dichas exigencias, el demandante quedará legitimado para exigir el cumplimiento de las obligaciones de la corporación.

Ahora bien, el profesor Díaz Olivo explica que "las exigencias dispuestas en el Artículo 12.04 solo aplican a aquellas obligaciones cuya responsabilidad la Ley [Núm. 64-2009, *supra.*] impone expresamente a un oficial, director o accionista". Díaz Olivo, *op. cit.*, pág. 427. Es decir, el Artículo 12.04(b), *supra*, únicamente aplica en aquellos casos dispuestos en los Artículos 4.07, 5.08, 5.22 y 9.12 de la Ley de Corporaciones, 14 LPRA secs. 2727, 2768, 2782 y 3012F, respectivamente. Véase, además, *Lone Star Indus., Inc. v. Redwine*, 757 F.2d 1544 (5th Cir.) (1985). Estos se refieren a la responsabilidad de los directores u oficiales por publicar informes falsos sobre la corporación; de los accionistas por el pago de acciones parcialmente pagadas; a los directores por violaciones a la ley en el pago de dividendos o en la compra de acciones de la propia corporación; y de los accionistas por los activos distribuidos a ellos luego de disuelta la corporación. *Íd.*

De conformidad con lo anterior, si la responsabilidad del funcionario o del accionista no se deriva expresamente de la Ley Núm. 64-2009, *supra*, es decir, no se fundamenta en ninguno de los artículos antes mencionados, no son de aplicación las disposiciones del Artículo 12.04(b), *supra.* Díaz Olivo, o*p. cit.*, págs. 427-428. Por tanto, salvo dichos escenarios, cualquier demandante puede incoar una causa de acción en contra de los accionistas, oficiales o directores, incluyendo la de descorrer el velo corporativo, sin que sea indispensable obtener una sentencia a su favor.

**III.**

En su recurso de *Apelación*, la parte apelante señala que erró el TPI al no examinar su propia jurisdicción antes de hacer una determinación en este caso de falta de parte indispensable ante la ausencia de uno de los accionistas de la empresa CDA y la solicitud de descorrer el velo corporativo. Según alega la parte apelante, el Sr. Figueroa Alcalá era parte indispensable en el caso para poder otorgar un remedio completo debido a que era accionista de CDA, sin embargo, este nunca fue traído al pleito. Además, argumenta en su recurso que la demanda enmendada "está totalmente desprovista de alegaciones fácticas suficientes para establecer que procede rasgar el velo corporativo e imponer responsabilidad a los accionistas Carlos A. Morales Vázquez y Gregorio Figueroa Alcalá, obviando la ficción corporativa". Asimismo, señaló la parte apelante que debido a que la parte apelada no incluyó en la demanda ni emplazó al Sr. Figueroa Alcalá, el TPI nunca adquirió jurisdicción sobre uno de los dos accionistas de CDA, por lo que estaba impedido de obtener un remedio en el caso, ya que la determinación de descorrer el velo corporativo le imponía responsabilidad al patrimonio de ambos accionistas.

En el caso de autos, la parte apelada presentó una demanda original contra CDA por cobro de dinero, incumplimiento de contrato

y daños y perjuicios. Posteriormente, la parte apelada presentó demanda enmendada en la cual incluyó como demandados, además de CDA, al Sr. Morales Vázquez, a las corporaciones MLC, MLAC, GF, Wide y a las aseguradoras X, Y, y Z. En la demanda enmendada, adujeron que las corporaciones antes mencionadas eran corporaciones domésticas de las cuales el Sr. Morales Vázquez era accionista mayoritario y ejercía total control y dominio de las finanzas, políticas y negocios de cada una de ellas. Además, alegaron que dichas corporaciones funcionaban como instrumento, agente o *alter ego* del Sr. Morales Vázquez, y no como corporaciones independientes. La parte apelada le solicitó al TPI descorrer el velo corporativo y que responsabilizara al Sr. Morales Vázquez en su carácter personal por las sumas reclamadas.

El TPI resolvió, entre otros extremos, en la *Sentencia* apelada: "...**declaramos Ha Lugar la demanda presentada en cuanto a la deuda reclamada a CDA. Ordenamos el pago de CDA al señor Galloza Serrano por la cantidad de $80,000.00**. **No encontramos probado los requerimientos necesarios para descorrer el velo corporativo**. Igualmente, declaramos No Ha Lugar la reconvención presentada por CDA en contra del Sr. Héctor N. Galloza Serrano."

Conforme a lo discutido anteriormente, es importante puntualizar que las corporaciones gozan de personalidad jurídica propia, la cual es distinta y separada de aquella de sus miembros. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, supra, pág. 49-50. Por lo tanto, las corporaciones tienen autonomía patrimonial y responsabilidades separadas de las de sus accionistas. *Fleming v. Toa Alta Develop. Corp.*, 96 DPR 240, 244 (1968).

En el caso ante nuestra consideración, surge que las acciones de la demanda enmendada iban dirigidas contra el Sr. Morales Vázquez, las corporaciones CDA, MLC, MLAC, GF, Wade y las aseguradoras. Sin embargo, el TPI desestimó la causa de acción

contra las corporaciones MLC, MLAC, GF y Wide, empero, declaró Ha Lugar la demanda exclusivamente contra CDA. Además, el TPI no encontró probada la causa de acción contra el Sr. Morales Vázquez en su carácter personal. Por lo tanto, el TPI le impuso únicamente responsabilidad a CDA ya que esta gozaba de personalidad jurídica, la cual es independiente de sus accionistas.

Así pues, tomando en consideración la normativa jurídica aplicable, en el presente caso no existe justificación alguna para determinar que el Sr. Figueroa Alcalá era parte indispensable. Dicha figura es restrictiva y solo puede ser invocada cuando la adjudicación de los méritos de un caso pueda perjudicar un interés real e inmediato de una parte ausente. No es suficiente, para configurar este interés, el que un accionista tenga un interés propietario en la corporación demandada; de lo contrario, toda acción contra una corporación tendría que incluir también a todos sus accionistas.

Se desprende claramente de la *Sentencia* que el TPI resolvió que no encontró probados los requisitos necesarios para descorrer el velo corporativo. Por lo tanto, la causa de acción de la demanda fue declarada Ha Lugar contra la corporación, CDA, y no así contra sus accionistas. Así pues, de las alegaciones de la *Primera Demanda Enmendada* no hay alegaciones específicas sobre que el Sr. Morales Vázquez es un agente o *alter ego* de CDA y las otras compañías. De la prueba aquilatada y creída por el TPI surge que concluyó que las transacciones entre las compañías se dieron en el curso ordinario de los negocios.  Tampoco quedó demostrado al foro primario, como requisito previo a descorrer un velo corporativo, que CDA era un *alter ego* o instrumento económico pasivo de sus únicos accionistas, recibiendo estos exclusiva y personalmente los beneficios producidos por la gestión corporativa.

En conclusión, luego de un examen minucioso del caso, estamos convencidos de que actuó correctamente el TPI al emitir su dictamen. En consecuencia, resolvemos que el error señalado no fue cometido, por lo cual procede confirmar el dictamen apelado.

**IV.**

Por los fundamentos anteriormente expuestos, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones